IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

NIKKI RUSSO,

       **Plaintiffs,**

v.                                        **Case No.: 3:19-cv-00774**

CVS PHARMACY, INC.

       **Defendant.**

## MEMORANDUM OPINION and ORDER

Pending before the Court is Plaintiff's Motion for Protective Order from Plaintiff's Rule 30(B)(6) Deposition Notice. (ECF No. 49). Defendant filed a response to the motion to which Plaintiff filed a reply. (ECF Nos. 52, 55). Having considered the arguments of counsel, the Court **GRANTS, in part,** and **DENIES, in part,** and **ORDERS** as set forth below.

Plaintiff, a pharmacist and former Pharmacy Manager for Defendant, alleges that Defendant terminated her because she was unable to administer immunizations due to her "needle phobia" from a prior needle stick incident and because she reported patient safety issues. (ECF No. 1-1). She asserts claims for disability discrimination, failure to provide reasonable accommodation, gender discrimination, violation of the West Virginia Patient Safety Act of 2001 (PSA), and wrongful discharge. (*Id.*).

In the present discovery dispute, Defendant moves for a protective order quashing or limiting the scope of Plaintiff's Rule 30(b)(6) deposition notice of a corporate representative. (ECF No. 49); *see* Fed. R. Civ. P. 30(b)(6). The following topics

are in dispute:

I.      **Topic 4:** Thoroughly explain, discuss and provide further details concerning the facts and assertions in defendant's answers to interrogatories, including particularly but not limited to #2, #3, #6, #9, #14, #15 and #16. (ECF No. 49-1 at 8).

Defendant contends that this category remains overbroad, although Plaintiff

agreed to limit the topic to the specific interrogatories identified. (ECF No. 50 at 6). First,

Defendant addresses interrogatory numbers two, three, and nine.

>       ***Interrogatory No. 2:*** Please describe with specificity any material facts, omissions, or statements relied upon and every reason for the plaintiff's termination of employment from CVS. In providing your answer, please be specific when describing the fact, omission, statement or reason that supported the decision to terminate the plaintiff. Include in your response the names of any witnesses and identify the documents that you will rely upon in support of your answer. Documents include, but are not limited to, policies & procedures, policy manuals, employee handbooks, e-mails, handwritten notes or pharmacy logs. (ECF No. 49-9 at 1).

>       ***Interrogatory No. 3:*** Please identify by full name, job title, present place of employment, home address and home and/or personal cell phone number, each person who participated in the decision to terminate the plaintiff's employment; and, if applicable, separately identify the person or persons who made the final decision to terminate the plaintiff's employment and escribe [sic] the material details of the person's participation. To have "participated in the decision" means to have influenced the decision in any way, including but not limited to, supplying material information on which the decision was based, reviewing information on which the decision was based, recommending the decision, reviewing a recommendation, approving a recommendation, or being involved in any other material way with influencing the decision to fire the plaintiff. (*Id.* at 3).

>       ***Interrogatory No. 9:***  Please provide a complete account of the plaintiff's termination and include the following: A. The full name(s), position(s) or title(s) of each individual at the termination; B. The date the decision to terminate the plaintiff was actually made; C. The effective date of the termination; D. Any and all statements made to the plaintiff during the termination; E. Any and all statements made by the plaintiff during the termination; F. If the decision to terminate involved the application of a company policy, identify that policy with particularity including, but not limited to, the name, number, date of adoption, and any changes made thereto. In answering this interrogatory, please describe with specificity

how the policy was applied to the event that led to the plaintiff's termination; and G. Attach to these interrogatories a copy of any and all documents you will rely upon in support of your answer. (*Id.* at 5).

Regarding the above interrogatories, Defendant contends that Plaintiff already elicited extensive testimony from her supervisor, District Leader, Josh Russell ("Russell"), concerning the circumstances leading to her termination, as well as from Russell's supervisor, David Saef. (ECF No. 50 at 6). In addition, Defendant notes that Plaintiff scheduled a deposition of a representative from Defendant's "Advice & Counsel" department, Victoria Rampino. (*Id.*). As such, Defendant argues that any testimony that a corporate representative would provide regarding interrogatory numbers two, three, and nine would be duplicative of the other witnesses. (*Id.*).

Plaintiff indeed does not argue that she requires additional information concerning the foregoing interrogatories. Rather, she contends that she seeks testimony "that shall be binding upon the defendant," and the fact witnesses did not provide answers that were binding on the corporation. (ECF No. 52 at 8). Therefore, given the fact that Plaintiff does not require additional information with respect to these categories, it appears that the dispute concerning this topic can be resolved by stipulation. The Court **ORDERS** the parties to meet and confer within seven (7) days to discuss stipulating that specific deposition testimony, which is relevant to interrogatories two, three, and nine, is binding upon Defendant. If the parties are unable to resolve the matter, they are directed to contact the Court's judicial assistant to schedule a telephone conference.

> ***Interrogatory No. 6:*** For the 10 years prior to October 2018, please identify each and every CVS pharmacist fired for the same reason and/or pursuant to the same policies, relied upon in firing the plaintiff. For each employee identified, produce a copy of their personnel file. (ECF No. 49-9 at 4).

Defendant asserts that Interrogatory Number Six is similar to Topic Nine in Plaintiff's 30(b)(6) deposition notice for which Plaintiff offered to limit the scope of inquiry to the three states (West Virginia, Kentucky, and Ohio) in which Russell, the decisionmaker regarding Plaintiff's termination, supervised stores. (ECF No. 50 at 6, 7). However, Defendant contends that the scope should be further narrowed to include only the stores under Russell's supervision due to the fact that Russell only supervised a few stores in Ohio and/or Kentucky. (*Id*. at 7). Furthermore, Defendant notes that it responded to this interrogatory, stating that there were no other pharmacists, who worked in West Virginia in the time period January 1, 2015 through December 31, 2019, who were terminated for refusing to perform patient immunizations and who were not exempted from that required job function as a reasonable accommodation. (*Id*. at 6). However, it is unclear if Defendant's qualified response provides all of the information requested in Interrogatory Number Six. Plaintiff was employed by Defendant from September 2009 until October 19, 2018. (ECF No. 1-1 at 7). Therefore, the time period of the interrogatory, October 2008 through October 2018, is reasonably limited in scope. However, the Court agrees that the topic is otherwise overbroad, a finding which Plaintiff appears to recognize given her agreement to limit Topic Nine to the states in which Russell managed stores. Considering those factors, the Court **GRANTS** Defendant's motion for protective order to limit the scope of corporate testimony concerning Interrogatory Number Six to the specific CVS stores under Russell's supervision.

> ***Interrogatory No. 14:*** In the State of West Virginia, for the period of January 1, 2018 through to December 3, 2019, please identify all pharmacists hired by CVS. Identify the following information: A. The name of the pharmacist(s); B. The gender of the pharmacist(s); C. The date

of birth of the pharmacist(s); [sic] (ECF No. 49-9 at 9).

Defendant contends that it produced a spreadsheet in response to Interrogatory Number 14, and it is unclear what further information Plaintiff seeks from a corporate designee. (ECF No. 50 at 6). Plaintiff responds that she is "entitled to a designated 30(b)(6) witness to explain the contents of the spreadsheet," but she does not identify any information in the spreadsheet that requires explanation. (ECF No. 52 at 9). As the information contained in the spreadsheet appears very straight forward, and Plaintiff fails to explain how testimony would elucidate or supplement the spreadsheet, such testimony is cumulative. Therefore, the Court **GRANTS** Defendant's motion for protective order regarding Interrogatory Number 14. Defendant is not required to produce a corporate designee for this category.

> ***Interrogatory No. 16:*** Identify and describe in detail each and every "metric" used by the defendant to measure, assess or otherwise evaluate the performance of a pharmacist and separately a pharmacy for calendar years 2015 through and including 2019, and include at a minimum the following: A. The name of the metric; B. The goal and/or parameters set by the metric; C. The consequence of meeting the metric; D. The consequence of not meeting the metric; and E. Attach a copy of each and every metric used between 2015 through and including 2019. (ECF No. 49-9 at 9-10).

Defendant argues that Interrogatory Number 16 was the subject of a prior motion to compel, and it was only ordered to produce 12-months' worth of immunization data for Russell's district whereas the other metric information was found to be irrelevant. (ECF No. 50 at 7). Plaintiff clarifies that she only seeks corporate testimony concerning the information that was produced regarding Russell's district. (ECF No. 52 at 9). However, the deposition topic, as stated, concerning Interrogatory Number 16 does not contain such limitation. Thus, the Court **GRANTS** Defendant's motion for protective order to limit the scope of corporate testimony concerning Interrogatory Number 16 to

the information produced regarding the stores in Russell's district.[1]

II.      **Topic 7 (first clause):** Identify all CVS pharmacists who did not immunize in 2018. (ECF No. 49-1 at 8).

    **Topic 9:** Identify, describe and discuss any CVS pharmacist terminated or forced to resign/retire because he/she failed to administer immunizations and/or failed to submit a RAQ. (*Id.*).

Defendant moves for a protective order concerning Topics Seven and Nine on the basis that they are overly broad and, like the other topics, should be narrowed in scope to the stores under Russell's supervision. (ECF No. 50 at 7-8). Plaintiff states that Defendant is a national company, and its policies, procedures, and protocols are uniform throughout the company. (ECF No. 52 at 10). However, as previously discussed, Russell was the decisionmaker regarding Plaintiff's termination. Plaintiff fails to show that information concerning CVS pharmacists nationwide, who were not supervised or fired by Russell, is relevant to her claims and proportional to the needs of the case. Therefore, the Court **GRANTS** Defendant's motion for protective order to limit the scope of corporate testimony concerning Topics Seven (first clause) and Nine to the stores under Russell's supervision.

III.     **Topic 8:** Identify, describe, and discuss CVS Conflict of Interest and Associate Integrity policies. (ECF No. 50 at 3).

    **Topic 12:** Identify all instances for the five years beginning January 1, 2014 through December 31, 2018, of a CVS pharmacist having his or her license to practice pharmacy suspended and explain the actual consequence to the pharmacist in terms of his or her employment with CVS; and discuss the likely consequence to a CVS pharmacist whose license to practice pharmacy is suspended by a state Board of Pharmacy while employed by CVS. (*Id.*).

    **Topic 13:** Thoroughly explain, discuss and provide further details concerning CVS pharmacist Daniel Brainard's transfer when his license to

---

[1] The parties resolved the dispute concerning Interrogatory No. 15. (ECF Nos. 50 at 7, 52 at 9). Therefore, the Court omits discussion of such interrogatory.

practice pharmacy was suspended by the West Virginia Board of Pharmacy in 2016. (*Id.* at 4).

Defendant argues that Topics 8, 12, and 13 are aimed at garnering information relating to alleged comparator, Daniel Brainard ("Brainard"). (ECF No. 50 at 8). Plaintiff alleges that Brainard was a pharmacy manager under Russell's supervision whose West Virginia pharmacy license was suspended for one year (all but 90 days of which were stayed) in 2016 after he dispensed the wrong medication and the patient died. (ECF No. 52 at 10-11). Plaintiff states that Brainard then applied for an Ohio pharmacy license and he lied in the application about the pending disciplinary charge and was reprimanded by that State Board when it discovered his misrepresentation. (*Id.* at 11-12). According to Plaintiff, Russell treated Brainard favorably, including never disciplining Brainard for the dispensing error, West Virginia suspension, or Ohio reprimand, and Russell instead transferred Brainard to an Ohio CVS and continued to pay him a pharmacy manager's salary, although Brainard worked as a staff pharmacist. (*Id.* at 12). Plaintiff indicates that Russell gave Brainard such favorable treatment because they had a friendly relationship and socialized during various overnight fishing trips and other events with other pharmacists and employees. (*Id.*). Plaintiff asserts that only men were included in the activities. (*Id.*).

Defendant contends that it should not have to produce a witness on Topics 8, 12, and 13 because Brainard is not a proper comparator. (ECF No. 50 at 9). Defendant states that the only similarity between Brainard and Plaintiff is that they were both pharmacy managers under Russell's supervision. (*Id.*). In response, Plaintiff states that Brainard is undoubtedly an appropriate comparator because, *inter alia*, they were both subject to disciplinary decisions made by Russell, but they were not treated the same. (ECF No. 52

at 10-11). She argues that Topics 8, 12, and 13 are relevant to her gender discrimination and public safety claims. (*Id.* at 10). She explains that she was unable to immunize, a single type of task performed by a pharmacy manager, whereas Brainard could not perform any of the duties of a pharmacy manager for 90 days, yet Russell found a way to keep Brainard employed by moving him to another store as a staff pharmacist and Plaintiff was fired. (*Id.* at 14-15).

Focusing on the only argument adduced by Defendant, that Brainard is not an appropriate comparator, the Court finds that Plaintiff is entitled to discover information concerning Brainard as a comparator because he held the same employment position of pharmacy manager as Plaintiff, was under the supervision of Russell, and was allegedly treated differently despite not being able to perform essential job functions. Therefore, the Court **DENIES** Defendant's motion for protective order concerning Topics 8, 12, and 13.

**IV.** **Topic 14:** Thoroughly explain, discuss and provide further details concerning the 2018 reduction in CVS pharmacist hours and Dr. Russo's report that patient safety was at risk. (ECF No. 50 at 4).

**Topic 15:** Thoroughly explain, discuss and provide further details concerning CVS pharmacists allowing pharmacy interns and/or technicians to perform pharmacist only tasks in the prescription filling and dispensing process, as alleged by Dr. Russo and documented in a CVS investigation. (*Id.*).

Plaintiff alleges that she was fired, in part, in retaliation for raising patient safety issues. Specifically, she claims that she reported to Defendant that a reduction in pharmacist hours per week and the practice of allowing interns or technicians to perform pharmacist-only tasks created a threat to public safety. (ECF No. 52 at 16). She asserts that Defendant fired her in violation of the West Virginia Patient Safety Act of 2001 (PSA), which prohibits retaliation or discrimination against a healthcare worker for

8

making a good faith report to a healthcare entity of an instance of wrongdoing or waste. (*Id.*). Plaintiff argues that Topics 14 and 15 are intended to prove that she made the reports in good faith and that what she reported was protected activity under the PSA. (*Id.* at 17). She asserts that while Brainard provided testimony on the topic, he was a fact witness, and Plaintiff claims that she requires testimony that is binding on the corporation. (*Id.* at 18).

Defendant moves for a protective order on the basis that corporate testimony on Topics 14 and 15 is irrelevant and unnecessary to prove Plaintiff's claim because the issue is not whether the patient safety violations actually occurred, but whether Plaintiff complained about protected activity in good faith and was fired for those complaints. (ECF No. 50 at 11, 13). Furthermore, Defendant notes that testimony from Defendant's representative would be duplicative of deposition testimony elicited from Russell, Brainard, and Plaintiff herself.

Indeed, Plaintiff does not identify any additional information that she requires concerning Topics 14 and 15. She cites testimony from Brainard that is responsive to the topics, and she does not dispute Defendant's claim that she has secured additional fact witness testimony concerning Topics 14 and 15. Rather, Plaintiff again makes clear that the fact witness testimony is not binding on Defendant as a corporation. Therefore, the Court **ORDERS** the parties to meet and confer within seven (7) days to discuss stipulating that the relevant fact witness testimony is binding on Defendant, which would alleviate the need for potentially duplicative inquiry during the 30(b)(6) deposition. If the parties are unable to resolve the matter, they are directed to contact the Court to schedule a telephone conference.

**V.     Topic 17**: Thoroughly explain, discuss and provide further details concerning any evidence that Dr. Russo not immunizing was negatively impacting CVS' ability to take care of patients. (ECF No. 50 at 4).

Defendant argues that any testimony concerning whether Plaintiff had a negative impact on CVS' ability to take care of patients is irrelevant to the claims and defenses in this litigation because it was not a reason that Plaintiff was fired. (ECF No. 50 at 13-14). Plaintiff responds that there is evidence that Plaintiff's supervisors, Russell and Saef, believed that her inability to immunize was negatively impacting CVS' ability to care for patients and causing financial loss, and those beliefs influenced the decision to fire her. (ECF No. 52 at 19-20). Plaintiff alleges in her complaint that she was fired due to a disability, "needle phobia," and that she was permitted to not immunize for years after she suffered a needlestick, but "defendant unilaterally and unreasonably stopped providing reasonable accommodation to the plaintiff for no legitimate business reason [...] Defendant cannot prove plaintiff's inability to immunize patients created an undue economic burden on defendant's business." (ECF No. 1-1 at 9, 13-14). Therefore, Topic 17 is relevant to at least one of Plaintiff's claims in this action, and it could possibly ultimately be relevant to Defendant's defenses if it were established that Defendant fired Plaintiff for a non-discriminatory and non-protected reason. For those reasons, the Court **DENIES** Defendant's motion for protective order concerning Topic 17.

The Clerk is instructed to provide a copy of this order to all counsel of record.

**ENTERED**: December 7, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge

10